Rush PETTWAY, et al.,
Plaintiffs-Appellants,

v.

AMERICAN CAST IRON PIPE
COMPANY, a Corporation,
Defendant-Appellee.

Nos. 81–7605, 81–7689.

United States Court of Appeals,
Eleventh Circuit.

July 15, 1982.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiffs-appellants.

Equal Employment Opportunity Com'n, Marcia B. Ruskin, Appellate Div., Washington, D. C., amicus curiae.

Thomas, Taliaferro, Forman, Burr & Murray, J. Fredric Ingram, Joseph W. Letzer, F. A. Flowers, III, D. Frank Davis, Birmingham, Ala., for defendant-appellee.

Before TUTTLE, RONEY and CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

This is the fifth appeal of this case which originated in the District Court for the Northern District of Alabama in 1966. It involves a claim by plaintiffs, a class of all black employees and former employees of American Cast Iron Pipe Company (ACIPCO) of discrimination in promotion, tenure, and transfer opportunities on account of race. The trial court found generally in favor of the plaintiffs' claim of discrimination, but denied both an injunction and an award of back pay. Upon appeal, this Court affirmed the trial court's findings favoring the plaintiffs' class but found ad-

ditional areas of discrimination. We remanded for the entry of an injunction and judgment for back pay. *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211 (*Pettway III*).[1] In the course of our opinion in *Pettway III,* we emphasized the difficulties if the trial court should undertake to try the liability of the employer and the amount due to each employee on an individual basis. The class was stated to consist of approximately 2242 members. Noting that the black employees had been injured by requirements of non-validated tests, high school graduation (in some instances), promotions based on seniority within separate departments from some of which under the prior practice blacks were excluded entirely, and that the number of openings for which blacks might have competed but for the illegal restraints was less than the number of members of the class, we said:

> ... There is no way of determining which jobs the class members would have bid on and have obtained if discriminatory testing, seniority, posting and bidding system, and apprentice and on-the-job training programs had not been in existence. Class members outnumber promotion vacancies; jobs have become available only over a period of time; the vacancies enjoy different pay rates; and a determination of who was entitled to the vacancy would have to be determined on a judgment of seniority and ability at that time. This process creates a quagmire of hypothetical judgments.

494 F.2d at 260.

We also said:

> However, when the class size or the ambiguity of promotion or hiring practices or the multiple effects of discriminatory practices or the illegal practices continued over an extended period of time calls forth the quagmire of hypothetical judgment discussed earlier, a class-wide approach to the measure of back pay *is necessitated....* When a court is faced with the employment situation like this case, where employees start at entry level jobs in a department and progress into a

myriad of other positions and departments on the basis of seniority and ability over an extended period of time, exact reconstruction of each individual claimant's work history, as if discrimination had not occurred, is not only imprecise but impractical.

*Id.* (footnotes omitted.) (Emphasis added.)

We then discussed possible means of proof of the amounts of back pay owed to the class as a whole and methods of properly distributing such amount among the members of the class and pointed to the suggestion of the Equal Employment Opportunity Commission's proposed formula as follows:

> While the appropriate formula should be decided by the Master after a hearing, this Court should instruct the Master that such formula should be based upon a class of whites which would be comparable to the members of the effective class but for the discrimination. By such a formula a determination of the gross award can be established without prohibitive expense within the physical and fiscal limitations of the Court. See *United States v. Georgia Power Co., supra,* 5 FEP cases at p. 598. Brief for the United States EEOC as amicus curiae at 47.

494 F.2d at 263.

The Court then stated:

> While the district court is not limited to this particular alternative, it has more basis in reality (i.e. actual advancement of a comparable group not discriminated against) than an individual-by-individual approach.

*Id.*

Thus, in *Pettway III,* this Court clearly stated that in this type of case, a class-wide approach to the measure of back pay is necessitated. We also stated that it "has more basis in reality than an individual-by-individual approach." Finally, we stated in a case of this kind "exact reconstruction of each individual claimant's work history, as if discrimination did not occur, is not only imprecise but impractical."

1. Pettway I and II dealt with procedural or    collateral matters.

Having then left open the possibility of the trial court's permitting the parties to arrive at the amount of back pay by agreement, we remanded the case to the trial court "for further proceedings not inconsistent with this opinion."

After remand, the parties negotiated for well over a year as to the terms of an injunction and a back pay settlement to carry into effect the mandate of this Court in *Pettway III*. The Court finally took over the drafting of the injunction which it included in its final judgment. After extensive negotiations, the parties worked out a proposed settlement of the back pay issue for submission to the Court. This settlement contemplated the paying of one million dollars to a subclass of 841 of the 2242 employees. It also included the payment of a substantial attorney's fee to the then counsel for the plaintiffs. Checks were drawn and issued to the members of the subclass. Some of them were cashed; some were rejected; some members, both among those who cashed their checks and those who rejected them, expressed their dissatisfaction with the settlement. Counsel urged the settlement and declined to appeal, even though dissatisfaction was expressed by 589 members of the subclass and by 150 other employees excluded from the subclass. All of the named plaintiffs remaining in the case opposed the settlement, as did the 589 members of the 841 persons subclass favored by the settlement. Nevertheless, the court entered the judgment. The court denied the request of the named plaintiffs to substitute counsel for Mr. Adams, who had negotiated the settlement. Nevertheless, present counsel appealed from the order and judgment approving the settlement. This Court in *Pettway IV* reversed, 576 F.2d 1157, finding the trial court's injunction inadequate and concluding that the court abused its discretion in approving the back pay negotiated settlement. This Court concluded its discussion of the back pay problem by saying:

On remand the court should reformulate the back pay subclass to include the 442 individuals who declined to accept the back pay tender and any other awardees who disaffirm their award in compliance with the procedures to be established by the district court. A number of options are then open to the court. Appellants in their brief indicate that if provided an opportunity for discovery and hearings to evaluate the adequacy of the settlement, the subclass members might be willing to accept their individual awards. In its discretion the court may wish to permit such discovery. The court might also encourage further settlement negotiations to arrive at a satisfactory subclass award for the remaining claimants. *If these procedures prove unsuccessful, the court could compute an appropriate comparability formula as its own judgment or utilize one of the other classwide remedies discussed in Pettway III, supra,* 494 F.2d at 260–63, *and [United States v.] United States Steel Corp., supra,* 520 F.2d [1043] at 1055–56, *taking care to articulate fully its findings and conclusions in support of the decree. United States Steel Corp., supra,* 520 F.2d at 1055. *As a last resort the court may utilize the individual-by-individual approach discussed in section IV supra.*

576 F.2d at 1222 (emphasis added) (footnote omitted).

After remand, considerable time and effort were spent between the parties at working out the details of a proper injunctive order in compliance with *Pettway IV*. These details were finally resolved and the court signed the injunctive order and stated that it would immediately go into the matter of back pay. Notices were mailed to each member of the class directing them to individually file a "notice of intent to participate in back pay determination." Approximately 1200 members of the class filed such notices with the court. Thereafter, the plaintiffs and defendant undertook broad discovery efforts as a part of which class members answered interrogatories propounded to them by the defendant. These individually executed interrogatories were completed in April, 1981. Other discovery requests and motions are still pending before the special master subsequently

appointed by the district court. The court appointed a special master to consult with the parties and attempt to work out a compromise settlement on back pay which was contemplated to be on a classwide basis. By its order of appointment the court apparently sought to give the plaintiffs an option of settling as a class or facing a solution of the back pay issue by a different special master on an individual basis. The court said:

> If a settlement is not concluded by July 1 the court would forthwith refer such issues to a special master, and that the order of reference would instruct the special master that the court imposes upon each individual claimant to back pay the burden of *establishing* his current position and pay rate, *the jobs he was denied because of his discrimination* and their pay rates, a record of his employment history with the company *that qualified or would have qualified him for the denied positions*, and an estimation of the amount of back pay. (Emphasis added.)

The master met several times with the parties but finally reported that he was unable to cause the parties to settle the dispute, and he was subsequently discharged by the court.

On July 16, 1981, plaintiffs filed a motion for an evidentiary hearing in which they could submit evidence in support of classwide methods of adjudicating back pay claims. Without passing on that motion, the trial court held a hearing of counsel on July 17 to discuss the various suggested orders of reference to a special master. At this hearing nothing was said by either party as to the issue of classwide approach to the back pay awards. Appellant's counsel did object to language in a proposed order that placed any "burden of proof" on the employees, calling attention to the difference between the proposed burden of proof in the proposed order and the absence of any such burden in *Pettway III* and *IV.* The court stated it would adopt the language used by this Court in *Pettway IV.* The court included in its order of reference to the special master direction that the cases be disposed of on an individual-by-individual basis. It provided as follows:

> 9. The trial of this case shall proceed on an individual-by-individual basis previously discussed. The Court imposes on each individual plaintiff the burden of *establishing* his current position and pay rate, *the jobs he was denied because of discrimination* and their pay rates, a record of his employment history with the company *that qualified him or would have qualified him for the denied positions* and an estimation of the amount of requested back pay in accordance with the decisions of the Fifth Circuit Court of Appeals and the United States Supreme Court. As to any claimant who fails to meet his initial burden of proof, the Special Master *shall* specifically find where deficiencies existed and *recommend dismissal of such claims pursuant to Rule 41(b), FRCP.* (Emphasis added.)

It is this order of the trial court that is here on appeal. Appellants also complain that the district court abused its discretion in prohibiting the use of court reporters appointed pursuant to 28 U.S.C. § 753 during the back pay phase of the trial and that it also erred or abused its discretion in granting permission to the defendants to serve an offer of judgment directly on the individual class members.

The appellee first challenges the right of appellants to prosecute this appeal, contending that the trial court issued no "final" judgment as contemplated by 28 U.S.C. § 1291. With respect to the other issues appellee relies upon the contention that the trial court properly exercised its discretion.

## APPEALABILITY

Courts of appeals of the United States have jurisdiction of appeals from all final decisions of the district courts of the United States. 28 U.S.C. § 1291. Other than jurisdiction granted to courts of appeals from certain interlocutory orders as granted under 28 U.S.C. § 1292 the finality requirement of section 1291 governs except as modified by the Supreme Court's decisions

in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). In *Cohen*, the Supreme Court recognized a need to provide appeal in those situations where an order was not practicably remediable on final appeal. The Court held that the district court's refusal to order plaintiff in a shareholder's derivative action to post security for costs, required by a New Jersey statute, fell within "that small class which finally determined claims of right separable from, and collateral to, the rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1225.

The Court of Appeals for the Fifth Circuit has discussed the meaning of *Gillespie v. United States Steel Corp., supra.* In *United States v. Mississippi Power & Light Co.*, 638 F.2d 899 (5th Cir. 1981), the Court said:

■ *Gillespie v. United States Steel Corp.*, 1964, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199, furnishes the analytical framework for determining whether these orders are final within the meaning of § 1291. As that case points out, "a decision final within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." *Id.* at 152, 85 S.Ct. at 310. Thus, although the withholding of injunctive relief and retention of jurisdiction by the district courts in these cases makes it possible that they will be called on to issue another order to enforce their decisions, that fact alone is not dispositive on the issue of finality. *Thoms v. Heffernan*, 2 Cir. 1973, 473 F.2d 478, *vacated on other grounds*, 1974, 418 U.S. 908, 94 S.Ct. 3199, 41 L.Ed.2d 1154.

■ Rather, *Gillespie* dictates that we give the finality requirement a "practical rather than a technical construction" and that the chief countervailing considerations are "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." 379 U.S. at 152–53 [85 S.Ct. at 310–11] (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 1949, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 and *Dickinson v. Petroleum Conversion Corp.*, 1949, 338 U.S. 507, 511, 70 S.Ct. 322 [324], 94 L.Ed. 299). With these considerations in mind, we conclude that the orders are sufficiently final to vest us with jurisdiction.

638 F.2d at 903.

Significant, also, to the consideration we give to the issue of appealability here is the further reason outlined in *Mississippi Power & Light Co., supra*:

. . . These appeals are in effect a continuation of the first appeals. To resolve these issues now would impose no further inconvenience on the progress of this litigation. Indeed, refusal to decide these cases now would *create* cost and inconvenience without any benefit either to the party or to the orderly administration of the appellate system. . . .

*Id.* (Emphasis in original).

■ We now turn to the nature of the order which appellant seeks to present here for review to determine whether it meets the standards of *Cohen* and *Gillespie*, the latter as interpreted by the Court of Appeals for the Fifth Circuit by whose opinions decided prior to October 1, 1981, we are bound. As pointed out above, the trial court, without holding an evidentiary hearing, and without a discussion of the issue raised by plaintiff's motion therefor, referred all back pay questions to a special master declaring that they should be tried on an "individual-by-individual" basis. We have already, in effect, stated that to require each individual employee to prove his separate back pay entitlement is to require the impossible. We stated:

There is no way of determining which jobs the class members would have bid on and have obtained if discriminatory testing, seniority, posting and bidding systems, and apprentice and on the job training programs had not been in exist-

ence. Class members outnumber promotion vacancies; jobs have become available only over a period of time; the vacancies enjoy different pay rates; and a determination of who was entitled to the vacancy would have to be determined on a judgment of seniority and ability at that time. This process creates a quagmire of hypothetical judgments. 494 F.2d at 260. We also stated that "a classwide approach to the measure of back pay is necessitated" and that "exact reconstruction of each individual claimant's work history, as if discrimination had not occurred, is not only imprecise but impractical." *Id.*

Thus, when the trial court ordered the special master to proceed with the determination of back pay on an individual-by-individual basis this, in effect, directed the plaintiffs into a cul de sac. When we said that the classwide approach was necessitated because it was impossible to determine the exact rights of each individual employee, we indicated to the trial court that it should make every effort to provide for a classwide approach to determine the total amount the affected class of black workers had lost on account of the illegal practices of the employer, and only if it was unable to find a method of determining this would it then "as a last resort" "utilize the individual-by-individual approach discussed in section IV, *supra*." 576 F.2d at 1222. The individual-by-individual approach may permit certain numbers of the whole class of 1200 to establish their individual claims, because of the peculiar clarity of the details of their employment records. It could not, under any circumstances, as we so clearly noted in our previous opinions, begin to provide for the recovery of an amount approximating the back pay lost by the entire class of workers. Most of them would not be able to "establish" the "jobs [they were] denied because of discrimination."

The effect of the trial court's order that is here appealed from, therefore, was in effect to kill the class recovery entirely, and leave open only some relatively small number of individual claims. We think this order met the test of finality as discussed in *Cohen, Gillespie*, and *Mississippi Power & Light Co., supra.*

In this claim by a class of black employees, which was originally filed in 1966, and in which the trial court properly found class standing and also found as early as 1971 that the class had been discriminated against in several respects, but denied both injunctive and back pay relief, the issue of back pay has still not been decided. Under the order here appealed from it would be necessary for the special master to conduct 1200 separate trials on an individual-by-individual approach, unless he restricted the trials to the number of employees who have actually responded to interrogatories, some 850 (which appellants except to). While there is no evidence in the record, since the trial court did not permit any, counsel estimate that these proceedings, carried on apace, would take a minimum of five or six years to complete. Moreover, the expense to the plaintiffs, all low economic group wage earners, would be enormous. Of course, the expense to the appellee would also be great, but it is not here complaining on that score.[2] All together, it is difficult to see how to fault appellants' suggestion in their brief that the total cost of conducting the hearings on an individual-by-individual basis would be bound to exceed the total amount of back pay that could possibly be awarded. In an effort to lighten the out of pocket expense to the plaintiffs in conducting such hearings, the Equal Employment Opportunity Commission sought to intervene at this stage of the proceedings to assist in establishing the back pay award. This effort was frustrated by the court which denied the motion to intervene on the ground that it was too late. This order has been appealed and will be considered in a companion case. In making the comparison between "the inconvenience and cost of

2. However, the record reflects the fact that this employer is owned by its employees. It is apparent that useless expenditure of time and expense by ACIPCO would also injure the present employee plaintiffs pro tanto.

piecemeal review on the one hand and the danger of denying justice by delay on the other," 379 U.S. at 152–53, 85 S.Ct. at 310–11, we conclude that the danger of denying justice by delay must prevail.

## THE MERITS OF THE APPEAL

██ The appellants are not here to ask this Court to remand the case to the district court with directions that it try the back wage issue on a classwide basis. They complain only of the fact that, given the clear direction expressed in our two former decisions for a classwide resolution of the issue if possible, the trial court erred in not giving consideration to that solution. They also complain that the trial court could not properly determine the suitability of such a method of proceeding without hearing evidence as to the possibilities of shaping classwide relief. At the very least, they say the trial court erred in not assigning reasons for denying a form of procedure so clearly mandated by this Court.

In *Pettway III* we fully recognized the difficulties involved in arriving at a fair determination of back wages to which a class of employees are entitled because of their having been prejudiced by discriminatory promotion and transfer policies. However, we indicated several possible solutions of a classwide nature. *See* the discussion of averaging and of a comparability or representative employee earnings formula at 494 F.2d 262. We also stated that a comparability formula propounded by the Equal Employment Opportunity Commission "has more basis in reality (*i.e.*, actual advancement of a comparable group not discriminated against) than an individual-by-individual approach." 494 F.2d at 263. Presumably, also, there are expert witnesses available upon whom the plaintiffs would have depended if the trial court had granted their motion for a hearing on this issue. It is too early to consider the defendant's due process arguments until the dimensions and nature of class relief are at least presented by the experts. Tentatively, at least, we see no basis for such a contention

so long as the court's final judgment is factually supported to the extent that the amount found due to the class does not exceed the amount which all members of the class together would have been entitled to receive under a correct hypothesis, which we must assume the trial court would adopt.

We conclude, as we have twice before, that a classwide basis for granting relief must be considered by the trial court. In order fairly to consider this question the court should give the parties an opportunity to present evidence touching on the feasibility of such a method of relief. Unless the court determines that relief *cannot* be given upon a classwide basis, within the liberal concepts of allocation of burden of proof heretofore expressed in *Pettway III* and *IV*, it should proceed to determine the back pay issue on that basis. If it decides that relief cannot be given on such a basis, the court should state its reasons for such determination.

Finally, it must be pointed out that the trial court has failed to give effect to our decision dealing with the burden a class member is called on to carry. As noted above, the trial court's direction to the special master said: "The Court imposes on each individual plaintiff the burden of '*establishing*' . . . *the jobs he was denied because of discrimination*" and "a record of his employment with the company *that qualified him or would have qualified him for the denied positions.*" The maximum burden placed upon each plaintiff under the language of *Pettway III* and *IV* is quite different. "Therefore, the *maximum* (emphasis in original) burden that could be placed on the individual claimant in this case is to *require a statement of . . . the jobs he was denied because of discrimination* . . . a record of his employment history with the company and other evidence,[3] *that qualified or would have qualified him for the desired positions.*" 494 F.2d at 259.

Even though the court had not omitted the words "or other evidence" relating to the statement of the individual's qualifications the order appealed from placed on the

---

**3.** The words "and other evidence" were omitted from the court's order of reference.

employee the burden of *establishing, i.e., proving* that he had been denied a specific job or jobs because of discrimination and of *proving* that he was qualified. This greatly exceeds the maximum burden which this Court has twice stated requires only that the employee provide *a statement* claiming these facts. The language used in our prior decisions in this case to the effect that the maximum burden placed upon a member of the class "is to require a statement," etc. is precisely the burden that the Supreme Court described in discussing the burden placed on a defendant in a Title VII case when the plaintiff had made a prima facie showing of discrimination. In *Bd. of Trustees of Keene State College, et al. v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), the Court reversed a judgment of the Court of Appeals for the First Circuit which had stated that in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the Supreme Court required "the defendant to *prove* absence of discriminatory motive." The Court said: "While words such as 'articulate,' 'show,' and 'prove,' may have more or less similar meaning depending upon the context in which they are used, we think that there is a significant distinction between merely "articulat[ing] some legitimate, non-discriminatory reason" and "prov[ing] absence of discriminatory motive."

Here, the trial court's statement that each individual employee must "establish" the jobs that he had lost and that he was qualified for has placed a different and much heavier burden on the employee than this Court has stated to be the proper burden. The requirement that the maximum burden is to require a *statement* of the essential facts is as different from the trial court's requiring a plaintiff to "establish" them as was the language of the First Circuit requiring that a defendant prove a non-discriminatory motive and the Court's much lighter burden of "articulating" such a defense. After remand to the Court of Appeals for the First Circuit and its remand to the district court for further proceedings in *Sweeney*, the Court of Appeals again affirmed the judgment of the trial court,

and explained the manner in which it had construed the court's opinion and the manner in which the district court had proceeded in conformance therewith on remand. *See Sweeney v. Bd. of Trustees of Keene State College* 604 F.2d 106 (1st Cir. 1979). It was therefore error for the trial court to require that each member of the employee class prove the specific jobs that he had been denied and to prove that he was qualified to fill such jobs and that he would have received them but for the discriminatory practices of the company.

Since, as we have indicated, we must vacate the trial court's order of reference to the special master for the computation of damages on an individual-by-individual basis, we do not reach the further ground of appeal by appellants, complaining of the failure of the trial court to require that the hearings before the master be conducted in the presence of a regular court reporter. Since the nature of the reference to be made in the future may be entirely different in view of the requirement that such hearings be based on a classwide recovery if one is possible, we leave open for the trial court to consider at that time the propriety of the different forms of reporting and recording such hearings as may be required by a special master, if one is appointed.

Finally, the appellants complain of an order issued by the trial court at the time of the July 17 hearing granting a motion by the employer for "an order permitting it to serve, by mail, an offer of judgment, pursuant to Rule 68, Fed.R. Civ.P., upon each member of the putative back pay class in this action and further to permit said defendant, in the body of said offer of judgment, to reflect therein the defendant's position with respect to the reasonableness and validity of said offer, including information concerning other settlements of equal employment litigation in this locale; the amounts of money to date paid to attorneys who have and are representing members of the putative class; and the amount of back pay previously paid to the class members in 1975."

As will be seen, the only basis for defendant's claim to file the "offer of judgment,"

stated in the motions is Rule 68 Fed.R. Civ.P. This, of course, is a rule that provides that if an offer of judgment is tendered to a party by a defendant and is not accepted, but then the plaintiff subsequently thereto obtains a judgment that "is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." The costs in this case, as indicated above, would equal or exceed the total amount of back wages due. Such a Rule 68 offer of judgment has no provision for the inclusion of a brief on behalf of the offering defendant, dealing with such matters as "the reasonableness and validity of said offer, including information concerning other settlements of equal employment litigation in this locality; the amounts of money to date paid to attorneys and the amount of back pay previously paid to the class members in 1975." These matters have no relevance to an offer of judgment under Rule 68.

However, on this motion filed by the defendant on July 14, the trial court, at the July 17 hearing, allowed no discussion of the merits of the motion but merely stated:

There has been a motion filed by the defendant in this case for permission to serve upon each individual class member an offer of judgment. The motion contains a certificate that it has been served on Bob Wiggins, attorney for the class. That motion should be granted with a caveat that where reference is made to legal expenses incurred, it ought to include all legal expenses, not only the attorneys who have represented the plaintiff class but also the defendants because the employees of ACIPCO are owners of all of the stock. They are entitled to know, each individual, what has transpired in connection with negotiations, so I am granting that motion under the provisions of Rule 23(b) and the offer will be made to each member of the class. . . . so, Maebeth (deputy clerk) stamp that motion granted, and you can proceed immediately to mail out your offer settlement.

Thereupon counsel for the appellants stated: "Judge, before moving to another point, would it be appropriate to comment, or do you want us to save our comments?" To this the court replied: "Bob, I'm really not interested in any comments. I think it's so eminently fair that my mind is completely settled on that proposition." Thereupon the court granted the motion without permitting anybody to discuss the allegations in the motion, which was granted on a basis other than that upon which it was based. This order of the court was clearly based upon a representation by the defendant that counsel for the plaintiffs had improperly represented the class. The motion stated: "defendant is informed and believes that prior offers of settlement have not been adequately communicated or understood by the class members, said offer of judgment will not be fully communicated, and if communicated, understood by the members of said putative class unless each said member of said putative class personally receives said offer of judgment containing a stated explanation of the defendant's position with regard to the validity and reasonableness of said offer, as well as statement of the sums of money already paid by the defendant in an effort to settle this action." Thus, the court granted the motion on the basis of Rule 23(d), which permits wide discretion in the trial court in the management of class actions as to notice to some or all of the parties, based upon allegations of bad faith conduct of counsel for the class, whom the court had thus far found to be adequately representing the employees.

Such an order, issued under such circumstances, is and must be held to be, a nullity.

There is nothing under Rule 68 which permits an offer of judgment, with the attendant sanctions against the successful plaintiff to be served upon the opposing party, rather than the party's counsel of record. Also, it was not in the form of an offer of judgment. Obviously, therefore, this motion could not have been granted under Rule 68. So far as it was an effort to undermine the confidence of the members of the class in the representation by their counsel of record, it could not be entered by the trial court without at least counsel having been given an opportunity to be heard on that important issue.

Since we have found jurisdiction to consider the appeal from the July 20th order of reference to the special master, we consider it appropriate to consider this order announced by the court during the hearing on July 17, although a separate notice of appeal was filed from that order.

The orders appealed from are VACATED and the case is REMANDED to the trial court for further proceedings not inconsistent with this opinion. We retain jurisdiction so that if either party is dissatisfied with the district court's order, on remand the matter can come back to the same panel. The trial court shall make findings of fact and conclusions of law and certify them to this court upon motion of either party. That course will promote efficiency and spare three other members of this Court the task of wading through the thousands of pages of record that this dispute has engendered, is now engendering and, we fear, will engender in the future. The parties without further leave will have the opportunity to file supplemental briefs. *See Austin v. Parker*, 672 F.2d 508 (5th Cir., 1982).

The mandate shall issue forthwith.