**Eric GREENE, et al., Plaintiffs,**

v.

**AMERICAN CAST IRON PIPE COMPANY, Defendant.**

**Civ. A. No. 94–AR–0862–S.**

United States District Court,
N.D. Alabama,
Southern Division.

Dec. 14, 1994.

Hycall Brooks, III, Birmingham, AL, for plaintiffs Eric Greene, Michael A. Scott, Larry C. Turner.

Chris Mitchell, Thomas A. Davis, Constangy Brooks & Smith, Birmingham, AL, for defendant.

## MEMORANDUM OPINION

ACKER, District Judge.

■ The court has before it the motion of American Cast Iron Pipe Company ("ACIPCO"), defendant in the above-entitled cause, invoking the Consent Decree entered by Hon. Seybourn H. Lynne of this court in *Pettway v. ACIPCO,* CV 66–315, on July 14, 1980 ("the Consent Decree"). The motion seeks to compel arbitration of all issues presented by plaintiffs, Eric Greene, Michael A. Scott and Larry Turner (collectively "plaintiffs"), who are black employees of ACIPCO and who claim that ACIPCO discriminated against them on the basis of their race in violation of 42 U.S.C. § 2000e and 42 U.S.C. § 1981 by permitting or encouraging a racially hostile work environment. This court, of course, takes judicial notice of all pleadings and orders in *Pettway,* including the Consent Decree.

Whether express or implied in their arguments in opposition to ACIPCO's current motion, plaintiffs resist binding arbitration on three basic grounds. First, they say that ACIPCO has waived any right to arbitration by not having timely asserted it as a defense. Second, they say, or intimate, that the Consent Decree has expired by the passage of time and changes in circumstances. Last, they suggest that the Consent Decree is not and cannot be a substitute for direct access to the courts for deciding causes of action arising under federal statutes such as Title VII and § 1981.

### The Pertinent Facts

*Pettway* was a class action which peregrinated between this court and the appellate courts for 20 years and which in 1980 culminated in the Consent Decree here relied on by ACIPCO.[1] The original complaint in *Pettway* charged ACIPCO with racially motivated adverse employment practices, particularly with respect to the hiring and promotion of blacks. The Consent Decree is a complex and comprehensive document. It

---

1. *See Pettway v. American Cast Iron Pipe Co.,* 681 F.2d 1259 (11th Cir.1982) (*Pettway V*); *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157 (5th Cir.1978) (*Pettway IV*); *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211 (5th Cir.1974) (*Pettway III*); *Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998 (5th Cir.1969) (*Pettway II*); and *Dent v. St. Louis–San Francisco Ry. Co.,* 406 F.2d 399 (5th Cir.1969) (*Pettway I*).

contains, *inter alia*, a provision for the grieving and ultimate compulsory arbitration of

complaints by black employees as to ACIPCO's practices that may constitute conduct proscribed by federal civil rights laws.[2]

2. The Consent Decree contains, *inter alia*, the following provisions:

Whereas, all of the parties to this action desire to avoid the additional expense, delay, and uncertainty which would result from the continuance of this litigation and desire to formulate a plan to be embodied in a Consent Decree which will promote and effectuate the purposes of Title VII; and

Whereas, *this Decree covers all black employees, employed as of, or hired subsequent to, July 2, 1965,* at American's plant, who have allegedly been affected by the acts, policies and practices in issue, and *it appearing to the Court that entry of this Consent Decree will further the objectives of Title VII and will fully protect the rights and interest of all black persons on whose behalf this action has been brought, and all parties having to represented to the Court;*

\* \* \* \* \* \*

[I]t is hereby ORDERED, ADJUDGED AND DECREED that the defendant, American, its officers, agents, employees, and all successors and all persons in concert or participation with it be, and hereby they are, *enjoined and restrained from engaging in any acts or practices which have the purpose or effect of discriminating against any individual because of race . . . .*

\* \* \* \* \* \*

*American shall, consistent with the terms of this Decree, maintain and conduct all policies and practices of promotion, transfer, lay-off, recall, and other conditions of employment in a manner which complies with its obligation under Title VII of the Civil Rights Act of 1964.*

\* \* \* \* \* \*

**Grievance Procedure.**

*Any differences arising between American and any employee as to the application of, or compliance with, the provisions of this Decree shall be submitted pursuant to the following procedure:*

a. Any employee wishing to initiate the grievance procedure must present a written grievance to the departmental superintendent, or the designated departmental representative in the involved department, within seven (7) working days of the date of the grievable act. Within five (5) working days after receipt of the grievance, a meeting shall be held between the departmental superintendent, or the designated departmental representative, at which time a written answer giving an explanation for the act giving rise to the grievance shall be given to the grieving party. If the employee so chooses, he may have the Board of Operatives member from his district present at this meeting. Unless the grieving party chooses to withdraw his grievance at the close of this meeting and so indicates on the written forms which will be provided to him at said meeting, the grievance will automatically be sent to the Manager of Industrial Relations at American's Personnel Department. Within five (5) working days after receiving said grievance, the Manager of Industrial Relations will hold a meeting with the grieving employee at which time he will present to said employee an answer to his written grievance. If the employee so wishes, the Board of Operatives member from his district may be present at the meeting between the employee and the Manager of Industrial Relations. If the grieving employee is not satisfied with the answer of the Manager of Industrial Relations, he must file with the Manager of Industrial Relations, within seven (7) working days after his meeting with the Manager of Industrial Relations, a written notice of his intent to arbitrate his grievance. A form which can be utilized by the grievant to appeal his grievance to arbitration will be provided the grieving employee at the close of his meeting with the Manager of Industrial Relations. Within three (3) working days after the receipt by the Manager of Industrial Relations of a notice of intent to arbitrate a grievance, an arbitrator will be selected by the parties pursuant to the procedures specified below. Within seven (7) calendar days after the selection of an arbitrator, an Implementation Committee will meet and attempt to resolve the grievance. Within fourteen (14) calendar days after the selection of an arbitrator, an arbitration will be convened to hear said grievance. Said fourteen (14) calendar day period for the convening of the arbitration may be extended for good cause by agreement.

**Selection of Arbitrator**—*The United States District Court Judge for the Northern District of Alabama, Southern Division, to whom this action is assigned, shall be requested to nominate five impartial persons to serve as arbitrators* for all grievances arising out of this Decree. From this list of five impartial persons, the parties shall select an arbitrator for each grievance by the grievant's striking one name first, the company's striking one second, until only one name is left, and this person shall be the arbitrator to serve on said grievance. Failure to give written notice to the Manager of Industrial Relations requesting arbitration within seven (7) working days, as herein called for, shall be a waiver of said arbitration, which matter may be raised before or during the arbitration, and entering into the arbitration shall not be a waiver of this limitation. *The decision of said arbitrator shall be final and binding on all parties of the matter brought to arbitration.* The arbitrator shall not be permitted to vary the terms of this Consent Decree, nor shall he be empowered to add to or take away anything from same.

\* \* \* \* \* \*

**Period of Jurisdiction.**

This Decree shall continue to be effective and binding upon the parties for the period of three (3) years immediately following the entry of the Decree, *except as to the provisions of Paragraphs 13 and 16 of this Decree which shall continue in*

The instant complaint, filed on April 11, 1994, charges ACIPCO with the racial harassment of plaintiffs and other black employees, demands a jury trial, and prays for the following five forms of relief:

1. A declaration that "the employment practices, policies, procedures, conditions and customs of the defendant are violative of the rights of the plaintiffs...."

2. A permanent injunction against defendant and its agents, et al., from continuing such violations.

3. Compensatory damages (including nominal damages).

4. Punitive damages.

5. Attorney's fees and costs.

There is at least one other fact found pertinent to the present inquiry. It is a matter, like *Pettway*, of which this court takes judicial notice. On October 2, 1992, Hon. Edwin L. Nelson of this court entered a decree in *Jones v. ACIPCO*, CV 92–N–1948–S, in which a black employee of ACIPCO had complained that ACIPCO had violated Title VII and § 1981 in certain respects. Although Jones' complaint was not of a racially hostile work environment, he sought precisely the same kinds of relief sought by plaintiffs in the instant case, and he too, demanded trial by jury. As in this case, ACIPCO there invoked *Pettway* and moved for compulsory arbitration.[3] In *Jones*, Judge Nelson, by consent of the parties, sent all issues to binding arbitration and administratively closed the case. There is nothing in the record to indicate the outcome at arbitration. Interestingly, the same lawyer who represented Jones and conceded for him ACIPCO's motion now represents plaintiffs in the instant case. It is likewise interesting that the same lawyers who represent ACIPCO here represented ACIPCO there.

From July 14, 1980, the date of the Consent Decree, until the present, no one has petitioned for a dissolution of the injunction in *Pettway*, and no order has been entered by Judge Lynne, or by any other judge of this court, dissolving or eliminating any of the obligations created by the Consent Decree. Judge Lynne, contemporaneously with this memorandum opinion, has reassigned to the undersigned the issues in *Pettway* only insofar as they may bear on the instant case.

### Has ACIPCO Waived Arbitration?

In its first pleading after receiving the complaint in *Jones*, ACIPCO interposed

---

[3]. In support of its motion in *Jones*, ACIPCO asserted, *inter alia:*

Plaintiff Henry Jones ("Jones"), who is black, is an employee of defendant American Cast Iron Pipe Company ("ACIPCO") at its facility in Jefferson County, Alabama (Complaint ¶ 3).

\* \* \* \* \* \*

On July 14, 1980, the United States District Court for the Northern District of Alabama approved a Consent Decree in *Pettway v. ACIPCO*, a case involving claims of systemic racial

discrimination within the Manufacturing Division at ACIPCO (Consent Decree ¶ Preamble, 1, 2, and 3; pp. 1–2).

\* \* \* \* \* \*

Paragraph 16 of the Consent Decree (Grievance Procedure) provides that any differences arising between American and any employee as to the application of, or compliance with, the provisions of the Decree shall be resolved through a procedure ending with submission of the dispute to an arbitrator selected by the parties from among a panel of five persons nominated by the Court. The arbitrator's decision "shall be final and binding on all parties of the matter brought to arbitration." (Consent Decree ¶ 16).

Paragraph 23 of the Consent Decree (pp. 17–20) provides that the Decree shall continue in effect for three (3) years, "except as to the provisions of Paragraphs 13 and 16 of this Decree which shall continue in effect until all affected class members have exhausted their preferential movement rights...."

In filling vacancies and making promotions and other job-related decisions, ACIPCO management has continued to follow the terms of the Consent Decree and to treat it as though all provisions remained in effect (Affidavit ¶ 3).

effect until all affected class members have exhausted their preferential movement rights and except as to sub-paragraph 8d, for black employees who are on rate retention at the end of the duration of this Decree. The terms of this Decree cover specifically all injunctive relief required at American's Birmingham plant. It is expressly understood by and between the parties that at the end of the three (3) year period provided herein, this Court shall, except as provided in the preceding sentence, dissolve this Decree and dismiss with prejudice those aspects of the instant case, Civil Action no. 66–315, pertaining to injunctive relief.... (emphasis supplied).

compulsory arbitration as its first line of defense. In the present case ACIPCO waited several months to do the same thing. Perhaps recognizing this as the only real distinction between *Jones* and the instant case, the same plaintiffs' lawyer in both cases, the lawyer who did not oppose arbitration in *Jones,* seizes upon this time difference as the main means of defeating the compulsory arbitration procedure provided in the Consent Decree. As this court understands plaintiffs' first argument, it is based primarily on Rule 8(c), F.R.Civ.P., which provides:

> **Affirmative Defenses.** In pleading to a preceding pleadings, a party shall set forth affirmatively accord and satisfaction, *arbitration and award,* assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense.* When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

(emphasis supplied). In its original answer, which was the first "pleading to a previous pleading," ACIPCO did not mention the word "arbitration" or the words "Consent Decree," but did say, *inter alia:*

> Plaintiffs' claims are barred by their failure to pursue or exhaust internal remedies and procedures. . . .

The words "arbitration and award" in Rule 8(c) refer to the bar of a *completed* arbitration procedure in which the result purports to be binding. It is similar to a *res judicata* defense. If the interposition of the arbitration alternative as a defense is embraced within the language, "any other matter constituting an avoidance or affirmative defense," ACIPCO's prompt answer referring to "internal remedies" should have been enough to alert plaintiffs, who are represented by Jones' lawyer, of an impending compulsory arbitration defense, particularly in view of the following language in Rule 8(f),

F.R.Civ.P., entitled "Construction of Pleadings":

> All pleadings shall be so construed as to do substantial justice.

Of course, if there were any indication in this record that ACIPCO intentionally delayed the filing of its motion in order to gain tactical advantage through the use of discovery which would not have been available during arbitration, or that plaintiffs have otherwise been prejudiced by the delay, this court might find a waiver by ACIPCO of its arbitration defense, but such are not the facts.

The Eleventh Circuit dealt with the Rule 8(c) admonition as follows in *Grant v. Preferred Research, Inc.,* 885 F.2d 795, 797–98 (11th Cir.1989):

> Plaintiff argues that Preferred waived its statute of limitations defense by failing to plead it as an affirmative defense as required by Fed. Rule Civ.P. 8(c). *See American Nat. Bank of Jacksonville v. Federal Deposit Ins. Corp.,* 710 F.2d 1528, 1537 (11th Cir.1983) (affirmative defense of statute of limitations is waived if not pleaded). The Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). Thus, *if a plaintiff receives notice of an affirmative defense by some means other than pleadings, "the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." Hassan v. U.S. Postal Service,* 842 F.2d 260, 263 (11th Cir.1988). When there is no prejudice, the trial court does not err by hearing evidence on the issue. *Id. Preferred raised the statute of limitations defense in a motion for summary judgment filed in August of 1988, approximately one month before trial.* As a result, plaintiff was fully aware that Preferred intended to rely on a statute of limitations defense. Further, *plaintiff does not assert any prejudice from the lateness of the pleading.* Under these circumstances, the district court correctly addressed the statute of limitations

issue on the merits. *See Hassan,* 842 F.2d at 263.

(emphasis supplied) (footnote omitted).

As recently as October 26, 1994, this rationale was extended to a belated compulsory arbitration defense in *Scher v. Equitable Life Assur. Soc. of U.S.,* 866 F.Supp. 776 (S.D.N.Y.1994). In fact, the *Scher* court quoted *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985), as follows:

> "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring arbitration for dispute resolution."

866 F.Supp. at 778.

### Is the Consent Decree Still Binding, and If It is, Does It Cover This Controversy?

The result in *Jones* tends to prove the continued efficacy of the Consent Decree, although the result there was reached by concession rather than after full adversarial treatment. Despite language in the Consent Decree that is subject to the construction that Judge Lynne was expected automatically to relieve the parties of their Consent Decree obligations after the lapse of three years, Judge Lynne has never been asked, either by ACIPCO or by any member of the plaintiff class, to dissolve or to tinker with the Consent Decree, and the parties to it have continued to act as if they are bound. This is perhaps explained by the provision in the decree modifying the three-year limitation by the phrase which says that the grievance and arbitration machinery "shall continue in effect until all affected class members have exhausted their preferential movement rights." This court has no evidence that "all affected class members have exhausted their preferential movement rights." Instead, this court has read the *Jones* file.

■ Plaintiffs in the instant case do not even argue that the Consent Decree has expired by its terms. Neither do they argue that they are not members of the *Pettway* class. Instead, they argue that the passage of time (since *Jones?*) should cause this court *now* to relieve the parties of the obli-

gations imposed by the Consent Decree. In the alternative, plaintiffs argue that their instant complaint is not of the variety covered by the Consent Decree.

■ The mere passage of time does not render an injunctive order void. The undersigned does not have authority under the express terms of the Consent Decree to terminate the decree entered by Judge Lynne, who only transferred to the undersigned the right to deal with *Pettway* as it may apply to this case. Even if this court could or would usurp Judge Lynne's exclusive function, this court would be unwilling to consider the termination of the entire Consent Decree without first giving notice to, and obtaining the participation by, the class members. For aught appearing, the plaintiff class still has a substantial interest in the Consent Decree, an interest which under "due process" principles could not be done away with without notice and hearing.

■ Plaintiffs' better argument is that the Consent Decree was not designed to cover their current claim of a racially hostile work environment. In their brief, plaintiffs argue:

> The issue in *Pettway* was not a racially hostile environment. Indeed *Jones v. ACIPCO,* CV 92–N–1948–S, which is cited by the defendant, is a perfect example. Plaintiffs' counsel at bar also represented Henry Jones in the *Jones* case. The issue in *Jones* is the same issue as raised in *Pettway....* In *Jones* the plaintiff was complaining he was denied wage increases given to lesser qualified and persons with less senior rights.

Although plaintiffs are correct in saying that the Consent Decree does not expressly cover hostile environment claims, they fundamentally misunderstand the intent of the Consent Decree and its broad remedial nature. Both the preamble of the Consent Decree and its subsequent language contemplate the elimination (and subsequent monitoring to assure that elimination) of all "unlawful race discrimination in employment" by ACIPCO. The decree was expressly designed to "fully protect the rights and interests of all black persons." Furthermore, the remedy there formulated by the parties themselves was a

permanent injunction against all racially motivated "conditions of employment." Racial harassment in the workplace is certainly a "condition of employment" in which black employees have an interest.

### Can a Consent Decree That Requires Arbitration of a Federal Statutory Claim Substitute for Access To a Federal Court?

■ This court having concluded that the Consent Decree is still in force and, by its terms, covers the subject matter of plaintiffs' present complaint, the only question which remains is whether the Consent Decree preempts or precludes access to this court and, instead, requires mandatory arbitration. This point is not seriously argued by plaintiffs but has been seriously considered by the court.

Again, *Jones* is instructive. *Jones* reveals that the same lawyers who represent the parties in the instant case thought in 1992 that arbitration was a viable and mandatory substitute for the usual direct access to a federal court for the processing of employment discrimination claims under Title VII or § 1981. This court concludes that the lawyers in *Jones* were correct.

■ Although neither ACIPCO nor plaintiffs cite *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), in a striking departure from *Alexander v. Gardner–Denver Company*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *Gilmer* makes clear that an employment contract which provides for the binding arbitration of federal statutory causes of action is enforceable, because it provides an adequate alternative dispute resolution forum.[4] Following *Gilmer*, which was an age discrimination in employment case rather than a Title VII case, the Eleventh Circuit retreated from its earlier position, fostered by *Gardner–Denver*, and now holds that Title VII claims are subject to compulsory arbitration under the Federal Arbitration Act. 9 U.S.C. § 1 *et seq.; Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992). The court finds no ap-

pellate cases decided after *Gilmer* holding to the contrary. Among the cases which follow or expand upon *Gilmer* are *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991); *Corion Corp. v. Chen*, 964 F.2d 55 (1st Cir.1992) (in which then Chief Judge Stephen Breyer participated); *Crawford v. West Jersey Health Systems*, 847 F.Supp. 1232 (D.N.J.1994); and *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 638, —— L.Ed.2d —— (1994).

The instant case admittedly does not involve an employment *contract* as did the above-cited cases. Rather, it involves a Consent Decree which is the functional equivalent of a contract but which has the important added imprimatur of this court. Not only is the Consent Decree's arbitration provision binding, but its procedure is fundamentally fair, particularly because by invoking it as a substitute for adjudication by this court, ACIPCO is estopped from claiming before the arbitrator that plaintiffs are untimely, or have failed to exhaust EEOC remedies or have failed to exhaust grievance procedures preceding arbitration. ACIPCO is bound by its concession that the arbitrator is empowered to grant any and all relief that this court could grant, including declaratory relief, injunctive relief, compensatory damages, punitive damages and attorney's fees, and that his or her orders are thereafter enforceable in this court.

The fact that there are three plaintiffs with separate claims makes the arbitration alternative an even more compelling prospect. This is the kind of dispute ready-made for binding arbitration as contemplated by the Consent Decree, which was obviously bargained for in order to save both black employees and their employer from the time and expense of further litigation.

This court concludes this opinion by expressing the hope that nothing this court has said will induce or suggest to the parties that they seek a vacation of the Consent Decree, and instead that ACIPCO and its black employees will continue to resort to the binding

---

**4.** *See* Arthur D. Rutkowski, *Mandatory Arbitration of Job Bias Claims: An Employer's Panacea* or *Simply Two Bites of the Apple*, 1994 Lab. L.J. 636 (Oct.1994).

arbitration of any future race discrimination claims, which otherwise would come to court under Title VII or § 1981.

### Conclusion

Based on the foregoing, a separate order granting ACIPCO's motion to compel arbitration will be entered.